## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Northern Bottling Co., Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| vs. | ) | |
| | ) | |
| Henry's Foods, Inc., | ) | Case No. 1:19-cv-021 |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's motion to dismiss filed on March 15, 2019.  See Doc. No. 4.  On April 29, 2019, the Plaintiff filed a response in opposition.  See Doc. No. 9.  On May 28, 2019, the Defendant filed a reply brief.  See Doc. No. 12.  For the reasons set forth below, the Defendant's motion to dismiss is granted.

## I.    BACKGROUND

Northern Bottling Co., Inc. ("Northern")—a North Dakota corporation with its principal place of business in Minot, North Dakota—is a bottler and distributor of Pepsi-Cola brand soft drinks in certain parts of North Dakota and South Dakota.  Northern and non-party PepsiCo, Inc. are parties to a series of agreements, called Exclusive Bottling Appointments ("EBA"or "EBAs").  Each EBA appoints Northern as PepsiCo's "exclusive bottler, to bottle and distribute" a specific PepsiCo soft drink, such as Pepsi-Cola or Mountain Dew, in a designated geographic territory.  See Doc. Nos. 1, ¶ 2; 1-2, p. 1; 1-4, p. 1.  According to the complaint, PepsiCo produces the concentrate—the flavor base for the beverages—and sells it to independent bottlers.  The independent bottlers, such as Northern, manufacture, sell, and deliver the finished soft drinks to retailers in their geographic

1

territory, who, in turn, sell the products directly to the consuming public.  The EBAs provide that PepsiCo is the owner of the beverage trademarks and Northern does not have "any right or interest" in the trademarks.  See Doc. Nos. 1-2, ¶ 14 and 1-4, ¶ 15.

Henry's Foods, Inc. ("Henry's")—a Minnesota corporation with its principal place of business in Alexandria, Minnesota—is a vendor of food and beverages to retail sales outlets, including gas and convenience stores.  Among the items Henry's sells are Pepsi-Cola products.  Northern alleges Henry's is a third-party transshipper of PepsiCo products.   Third-party transshipping as defined in the complaint is "the distribution or sale of PepsiCo products in a bottler's exclusive territory by anyone other than the licensed bottler."  See Doc. No. 1, ¶ 11.  Specifically, the complaint provides that Henry's has transshipped PepsiCo products to six gas stations or convenience stores located within the geographic territory established in the Northern-PepsiCo EBAs.  See Doc. No. 1, ¶ 96.  Northern maintains throughout its complaint that Henry's' sales of PepsiCo soft drinks to these retailers are unlawful.

The complaint also alleges Henry's implicitly represented the following false or misleading facts while selling and promoting the sale of PepsiCo products to various gas station and convenience stores: Henry's was licensed or authorized to manufacture, sell, and distribute PepsiCo products; Henry's' sales were conducted in association with, or with the approval of, PepsiCo and/or Northern; Henry's' products were of the same quality or freshness as Northern's; Henry's' "pricing was legitimate"; and Henry's' "poor customer service" was caused or condoned by Northern.  See Doc. No. 1, ¶¶ 88, 97-98, 127-131.  The complaint does not provide any explicit representation made by Henry's to any gas station or convenience store.  Instead, the complaint provides that Henry's made the above implicit representations by: "calling on [Northern's] exclusive customer base,"

selling PepsiCo brand soft drinks to Northern's customers, "using and handling" PepsiCo trademarks, and listing PepsiCo soft drinks for sale in promotional brochures. See Doc. No. 1, ¶¶ 88, 97.

Northern filed suit against Henry's on January 23, 2019, for tortious interference with business expectancy, violation of the Lanham Act, and declaratory relief. Henry's now moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotes omitted). A plaintiff must show that success on the merits is more than a "sheer possibility." Id. A complaint does not need detailed factual allegations, but it must contain more than labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The court must accept all factual allegations of the complaint as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 678. A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. The determination of whether a complaint states a claim upon which relief can be granted is a "context-specific task that requires the reviewing court to draw on its judicial

3

experience and common sense." Id. at 679.


III.   **LEGAL DISCUSSION**

   A.   **Tortious Interference With Business Expectancy**

   North Dakota recognizes a tort claim for unlawful interference with business. Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc., 628 N.W.2d 707, 717 (N.D. 2001).  In order to prevail on such a claim, the plaintiff must prove the following essential elements: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted.  Id.  Henry's contends Northern has failed to plead elements three, four, and five.

   Element three of the claim for unlawful interference with business requires the plaintiff to prove "an independently tortious or otherwise unlawful act of interference by the interferer." Id.; see also Schmitt v. MeritCare Health Sys., 834 N.W.2d 627, 634 (N.D. 2013) (stating "'otherwise unlawful act of interference' meant 'otherwise in violation of state law.'").  Northern claims it has pled three violations of North Dakota law: (1) deceit, (2) false advertising, and (3) the consumer sales fraud prevention statute.


   1.   **Deceit**

   Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.

4

R. Civ. P. 9(b).  Henry's contends the heightened pleading requirements of Rule 9(b) apply to a claim for deceit, and Northern has not objected to such an application.

Under North Dakota law, "[o]ne who willfully deceives another with intent to induce that person to alter that person's position to that person's injury or risk is liable for any damage which that person thereby suffers."  N.D. Cent. Code § 9-10-03.  Deceit is defined as:

> 1. The suggestion as a fact of that which is not true by one who does not believe it to be true;
>
> 2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;
>
> 3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
>
> 4. A promise made without any intention of performing.

N.D. Cent. Code § 9-10-02.

North Dakota has recognized that fraud and deceit are similar concepts; fraud applies only when there is a contract between the parties, while deceit applies when there is no contract between the parties.  See Nagel v. Sykes Realty, Inc., 400 F.Supp.2d 1198, 1202 (D.N.D. 2005).  The Eighth Circuit Court of Appeals has held that claims grounded in fraud must meet the heightened pleading requirements under Rule 9(b), Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC, 781 F.3d 1003, 1010 (8th Cir. 2015), including North Dakota's tort of deceit.  Olin v. Dakota Access, LLC, 910 F.3d 1072, 1076 (8th Cir. 2018).  Accordingly, Northern's claim of deceit must meet the heightened pleading requirements under Rule 9(b).

"In order to satisfy the pleading requirements of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details

of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." Id. at 1075. Therefore, the plaintiff must typically identify the "who, what, where, when, and how" of the alleged fraud. United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003). "This requirement is designed to enable defendants to respond 'specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.'" Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001). "Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement." Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009).

In *Olin*, the Court dismissed the fraud claim, in part, because the plaintiffs failed to allege the "who" and "when" of the alleged fraud with the requisite specificity required under Rule 9(b):

> The Court finds the Plaintiffs have not pled fraud with the requisite specificity. While the amended complaint adequately describes what statements were made and what was obtained as a result, the amended complaint does not state the names of individual or individuals who allegedly made the fraudulent statements. It is not enough simply to refer to agents or employees of Dakota Access and CLS who negotiated easement agreements with the Plaintiffs as the persons who made the misrepresentations. Wivell, 773 F.3d at 898 (stating Rule 9(b) requires the names of the individuals involved). The names of these individuals are required as well. Id.

> However, other details are also missing. The allegation that the fraudulent statements were made in the context of easement negotiations around August of 2014, does not provide enough information about when the statements were made. There are twenty-two individual Plaintiffs in this case. The amended complaint repeatedly refers to the Plaintiffs collectively and fails to explain when any of the individual Plaintiffs spoke to the agents or employees of the Defendants. In addition, the amended complaint does not explain whether the communications were in person, by telephone, email, etc. The circumstances of the fraud must be pled with particularity. Wivell, 773 F.3d at 898. The lack of specificity makes responding to the allegation nothing more than a guessing game for the Defendants and does not allow them to answer in an intelligent fashion. The Court finds that the Plaintiffs have clearly failed to specifically allege who made the fraudulent statements, when the statements were made, and to whom the statements were made in order to comply

with Rule 9(b).

Olin v. Dakota Access, LLC, No. 1:17-cv-007, 2017 WL 4532581, at *4 (D.N.D. Oct. 10, 2017),

aff'd, 910 F.3d 1072 (8th Cir. 2018).

The operative allegations contained in Northern's complaint include:

88.   By calling on the bottler's exclusive customer base, selling and distributing PepsiCo Brands to their customers, and using and handling PepsiCo trademarks, Henry's impliedly holds itself out as a licensee authorized to manufacture, sell, and distribute PepsiCo Brands in a bottler's exclusive territory.  The end result is that the customers are confused, deceived even, into thinking Henry's is authorized to sell PepsiCo Brands or is otherwise licensed by or professionally associated with PepsiCo.  Nothing could be further from the truth.

. . . .

97.   To successfully steal these accounts from Northern, Henry's made false and misleading representations of fact while improperly selling and promoting the sale of PepsiCo Brands to various gas station and convenience stores.  For instance, Henry's implicitly represented to these customers that Henry's was authorized to sell PepsiCo Brands.  Henry's made these false representations in writing by distributing promotional brochures to Northern's customers that listed PepsiCo Brands for sale.

98.  Henry's' false representations were material and influenced various gas station and convenience stores' purchasing decisions (i.e., to purchase from Henry's instead of Northern).  In addition, Henry's' misrepresentations caused confusion and mistake among Northern's customers, leading them to falsely believe that Henry's' sale of the Brands (and related services and promotions) were conducted in association with, or with the approval of, PepsiCo and/or Northern, which they were not.  Moreover, Henry's' misrepresentations caused confusion and mistake among Northern's customers by deceiving them to believe that the Brands sold by Henry's had the same high-caliber characteristics and freshness associated with Northern's products.

. . . .

127.  To successfully steal accounts from Northern, Henry's made numerous false and misleading representations of fact while improperly selling (and promoting the sale of) PepsiCo Brands to various gas station and convenience stores.  For instance, Henry's misrepresented to these customers that Henry's was authorized to sell PepsiCo Brands and that its pricing was legitimate.  Upon information and belief, Henry's made these misrepresentations verbally and also in writing, including by

7

distributing promotional brochures to Northern's customers which offered to sell PepsiCo Brands.

128. Henry's' misrepresentations were material and influenced various gas station and convenience stores' purchasing decisions (i.e., to purchase from Henry's instead of Northern). Its misrepresentations were also literally false and misleading, which caused actual confusion among Northern's consumers and customers - in particular, various gas station and convenience stores located in Northern's exclusive territories who believed they were purchasing the same high-quality product associated with Northern. In reality, however, those customers often purchased outdated product manufactured hundreds of miles away from Northern's manufacturing centers.

129. Specifically, Henry's' misrepresentations caused confusion and mistake among Northern's customers, leading them to believe that Henry's' sale of the Brands (and related services and promotions) were conducted in association with, or with the approval of, PepsiCo and/or Northern, which they were not. Moreover, Henry's' misrepresentations caused confusion and mistake among Northern's customers by deceiving them to believe that the Brands sold by Henry's had the same high-caliber characteristics, quality controls, and freshness associated with Northern's products.

130. Henry's also made false and misleading misrepresentations of fact in connection with the sale and service of PepsiCo Brands to Northern's customers, which led various consumers and customers to believe that Henry's would undertake the same quality control services necessary to guard against the sale of outdated PepsiCo Brands. These false misrepresentations were made in commerce, were material to the purchasing decision of various gas station and convenience stores (inducing them to do business with Henry's rather than Northern), and injured Northern's profits and reputation and goodwill in the community.

131. In this way, Henry's has intentionally and improperly engaged in commerce in a manner that caused customers and the consuming public to believe that Henry's is a participant in Northern's authorized and exclusive sales network, creating significant confusion and mistake among the consuming public. Indeed, Henry's transshipped products look identical to Northern's and Northern's customers assume that the poor product and poor customer service resulting from Henry's conduct is caused or condoned by Northern (when it is not). Further, the average consumers purchasing CSD [carbonated soft drinks] at gas stations or convenience stores do not exercise a high degree of care (or know not to) when purchasing PepsiCo Brands; rather they depend on the local independent bottlers to ensure the product they purchase is fresh and quality controlled. Henry's misconduct and misrepresentations, however, is resulting in customers and consumers to be confused, deceived, and mistaken regarding the quality and characteristics of the products they purchase.

See Doc. No. 1, ¶¶ 88, 97-98, 127-131.

The Court finds Northern has not pled deceit with the requisite specificity.  First, Northern has not alleged with specificity who Henry's deceived.  At no point in Northern's 133-paragraph complaint does Northern identify by name a single gas station or convenience store that Henry's allegedly deceived; instead, Northern identifies them in general terms as "Northern's customers" or "various gas station and convenience stores."  Although Northern identifies six outlets that Henry's allegedly transshipped to, it does not specifically allege any of these six outlets were deceived by Henry's—let alone provide the name of any individual who deceived another or whom was deceived. See Olin, No. 1:17-cv-007, 2017 WL 4532581, at *4 (D.N.D. Oct. 10, 2017) (finding the Plaintiffs failed to plead fraud with the requisite specificity, in part, because "the amended complaint does not state the names of individual or individuals who allegedly made the fraudulent statements").

Second, the complaint also fails to state when or where Henry's allegedly deceived the outlets.  Although the complaint provides when Northern learned of Henry's' transshipping, see Doc. No. 1, ¶ 95, it does not allege any date in which Henry's made representations to an outlet, either verbally or in writing; or even a single instance of an employee of Henry's visiting an outlet, speaking with an employee of an outlet, or providing an outlet with a brochure.

Upon review of the complaint, it is evident that Northern has not alleged any express representation.  For an implicit representation to form the basis of a deceit claim, the implication must be "inferable from circumstances that are in fact equivalent to a positive representation."  37 Am. Jur. 2d Fraud and Deceit § 60 (2020).  In *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 593 (5th Cir. 1993), the Fifth Circuit Court of Appeals held that a seller's offering to sell products and stocking shelves with those products did not amount to a misleading representation

that the seller was "authorized" to sell those products.  In *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 484-85 (5th Cir. 2004), the Fifth Circuit held that an independent seller of vacuum cleaners could use the manufacturer's "KIRBY" mark to truthfully advertise that it sold new "KIRBY" vacuum cleaners, as long as the advertisement did not suggest affiliation with or endorsement by manufacturer.  Mere reference to the marked product does not suggest affiliation. Id. at 485.

Northern's complaint provides, "By calling on the bottler's exclusive customer base, selling and distributing PepsiCo Brands to their customers, and using and handling PepsiCo trademarks, Henry's impliedly holds itself out as a licensee authorized to manufacture, sell, and distribute PepsiCo Brands in a bottler's exclusive territory.  The end result is that the customers are confused, deceived even, into thinking Henry's is authorized to sell PepsiCo Brands or is otherwise licensed by or professionally associated with PepsiCo."  See Doc. No. 1, ¶ 88.  Under *Matrix Essentials* and *House of Vacuums*, Henry's' offer to sell or sale of PepsiCo soft drinks, or simple display of the PepsiCo trademarks, under the circumstances alleged, would not amount to a misleading representation that Henry's was licensed or "authorized" by PepsiCo to sell those products, or was otherwise associated with PepsiCo.  Thus, even if the complaint provided the "who," "when," or "where" of this alleged misrepresentation, the Court is skeptical that Henry's' alleged actions—offering to sell, displaying the product for sale in a brochure, and selling PepsiCo soft drinks—absent more, amount to a misleading representation.

With respect to any other potential allegations of deceit, Northern fails to allege with specificity what Henry's' misrepresentations were or how they were made to the outlets.  For example, the complaint provides: "Henry's misrepresented to these customers that Henry's was

authorized to sell PepsiCo Brands and that *its pricing was legitimate*.  Upon information and belief, Henry's made these misrepresentations verbally and also in writing, including by distributing promotional brochures to Northern's customers which offered to sell PepsiCo Brands."  See Doc. No. 1, ¶ 127 (emphasis added).  In addition to this allegation being based upon information and belief, see Drobnak, 561 F.3d at 783 ("Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement."), Northern does not allege (or even argue) what it means to have "legitimate" pricing, or how this is a misleading representation.  To the extent Northern alleges this is a misrepresentation, it wholly lacks the specificity required under Rule 9(b).

Northern also alleges, "Henry's' misrepresentations caused confusion and mistake among Northern's customers by deceiving them to believe that the Brands sold by Henry's had the same high-caliber characteristics, quality controls, and freshness associated with Northern's products."  See Doc. No. 1, ¶ 129; see also ¶¶ 98, 128, 130-31.  In this instance, Northern alleges an effect of the alleged representations: outlets believed the PepsiCo products sold by Henry's had the same quality and freshness as the PepsiCo products sold by Northern.  However, at no point in the complaint does Northern state what the actual representations were which led the outlets to form this opinion.  Nor does Northern allege how these specific representations were made or communicated to the outlets—i.e. verbally, by writing, or by an employee's actions.

Last, the complaint provides, "Northern's customers assume that the poor product and poor customer service resulting from Henry's conduct is caused or condoned by Northern (when it is not)."  See Doc. No. 1, ¶ 131.  Similar to the quality/freshness allegation, Northern fails to state what conduct on the part of Henry's led to the outlets allegedly holding this assumption.  This allegation also wholly lacks the specificity required under Rule 9(b).

Suffice it to say, Northern's allegations lack the "who, what, when, where, and how" required for adequately pleading the claim of deceit. Accordingly, the Court finds Northern has failed to allege a deceit claim under the heightened pleading standards of Rule 9(b).

### 2. False Advertising

Section 51-12-01 of the North Dakota Century Code prohibits false and misleading advertising, and provides, in relevant part:

> 1. No person with intent to sell . . . any product, merchandise, . . . or anything offered to the public may make, publish, disseminate, circulate, broadcast, or place before the public, . . . in a newspaper, or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, tab, label, letter, television or radio broadcast, placement on the internet, or in any other way, an <u>advertisement</u> or web page <u>that contains any assertion, representation, or statement of fact</u>, . . . <u>which is untrue, deceptive, or misleading</u> regarding such product, merchandise, . . . or anything offered to the public.

N.D. Cent. Code § 51-12-01 (emphasis added). Henry's contends the heightened pleading requirements of Rule 9(b) apply to a claim of false advertising, and Northern has not objected to such an application. The Court agrees that Rule 9(b) applies. See Olin, 910 F.3d 1072, 1075-76 (8th Cir. 2018); Streambend, 781 F.3d at 1010; Nunez v. Best Buy Co., 315 F.R.D. 245, 248 (D. Minn. 2016) (Rule 9(b)'s particularity requirement "applies to all claims premised on fraud, including 'claims of false advertising, deceptive trade practices, unlawful trade practices, and consumer fraud.'").

Northern contends Henry's violated Section 51-12-01 by distributing promotional brochures which listed PepsiCo products for sale, causing the outlets to "believe they were purchasing the same high-caliber and fresh products typical of products purchased from Northern." See Doc. No. 9, p. 8; see also Doc. No. 1, ¶¶ 97, 127-128. As stated above discussing the deceit claim, Northern has

wholly failed to allege the "who," "when," and "where" required under Rule 9(b).  Additionally, while Northern alleged an effect on the outlets, it has failed to allege what the "untrue, deceptive, or misleading" "assertion, representation, or statement of fact" was which led the outlets to form this opinion.  Absent anything more, simply listing a product for sale on a brochure is not an assertion, representation, or statement of fact which is untrue, deceptive, or misleading.

### 3. Consumer Sales Fraud Prevention

Section 51-15-02 of the North Dakota Century Code is North Dakota's version of a consumer sales fraud prevention act, see DJ Coleman, Inc. v. Nufarm Americas, Inc., 693 F.Supp.2d 1055, 1075 (D.N.D. 2010), and it provides:

> The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice. The act, use, or employment by any person of any act or practice, in connection with the sale or advertisement of any merchandise, which is unconscionable or which causes or is likely to cause substantial injury to a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition, is declared to be an unlawful practice.

N.D. Cent. Code § 51-15-02 (emphasis added).

Henry's contends the heightened pleading requirements of Rule 9(b) apply, and Northern has not objected to such an application.  The Court agrees that Rule 9(b) applies.  In Olin, the Eighth Circuit concluded that a plaintiff alleging a violation of the first category of Section 51-15-02—use of a "deceptive act or practice, fraud, false pretense, false promise, or misrepresentation"—must meet the heightened pleading standards under Rule 9(b).  910 F.3d 1072, 1076 (8th Cir. 2018).

13

Northern has not alleged (or argued) violations of the other categories—use of an act or practice that is "unconscionable" or "which causes or is likely to cause substantial injury to a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition."  Notwithstanding, the operative factual allegations in the complaint demonstrate such a claim would be grounded in fraud and, thus, must meet the heightened pleading requirements under Rule 9(b).  See Streambend, 781 F.3d at 1010; see also Olin, 910 F.3d 1072, 1075 (8th Cir. 2018) (stating, "A claim may sound in fraud even though it is brought under a statute that also prohibits non-fraudulent conduct.").

Northern does not explain in its brief in opposition to the motion to dismiss what allegations of its complaint support a claim for violation of Section 51-15-02.  However, the relevant allegations are the same as the claim for deceit, including: Henry's was licensed or authorized to manufacture, sell, and distribute PepsiCo products; Henry's' sales were conducted in association with, or with the approval of, PepsiCo and/or Northern; Henry's' products were of the same quality or freshness as Northern's; Henry's' "pricing was legitimate"; and Henry's' "poor customer service" was caused or condoned by Northern.  See Doc. No. 1, ¶¶ 88, 97-98, 127-131.  For the same reasons discussed above under the deceit claim, these allegations lack the "who, what, when, where, and how" required for adequately pleading a violation of Section 51-15-02 under Rule 9(b).

Because Northern has not adequately pled a violation of state law or an independently tortious act by Henry's, it has not alleged an essential element of the tort of unlawful interference with business.  Consequently, Northern has failed to state a claim of unlawful interference with business for which relief may be granted.  As such, the claim is dismissed.

**B.** **Lanham Act**

Section 43(a) of the Lanham Act "create[d] two distinct bases of liability: false association,

§ 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."   Lexmark Int'l, Inc. v. Static Control

Components, Inc., 572 U.S. 118, 122 (2014).  Although Northern does not specifically reference

Section 1125(a)(1)(A) or 1125(a)(1)(B) in either its complaint or response brief, it explicitly alleges

and argues that Henry's violated the "false advertising" provision of the Lanham Act.  Thus, the

Court will narrow its review to Section 1125(a)(1)(B), which provides:

> (1) Any person who, on or in connection with any goods or services, or any container
> for goods, uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which--
>
> . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another
> person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).  The alleged misrepresentations include those previous discussed:

Henry's was licensed or authorized to manufacture, sell, and distribute PepsiCo products; Henry's

sales were conducted in association with, or with the approval of, PepsiCo and/or Northern; Henry's

products were of the same quality or freshness as Northern's; Henry's "pricing was legitimate"; and

Henry's "poor customer service" was caused or condoned by Northern.  See Doc. No. 1, ¶¶ 127-31.

**1.** **Statutory Standing**

Henry's argues that Northern lacks statutory standing to assert a claim for false advertising

under the Lanham Act, because PepsiCo, not Northern, retains ownership of the PepsiCo trademarks. Statutory standing presents a question of whether Northern falls within the class of plaintiffs whom Congress has authorized to sue under the Lanham Act.  See Lexmark, 572 U.S. at 128.  That question is resolved by determining whether the Plaintiff has sufficiently alleged that: (1) it comes within "the zone of interest" implicated by the statute; and, (2) that the Defendant's conduct proximately caused its damages.  Id. at 129-33.  In *Lexmark*, the United States Supreme Court held that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales."  Id. at 131-32.  Second, the plaintiff must demonstrate that its injuries were proximately caused by conduct that the statute prohibits.  Id. at 133.  "Put differently, the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct."  Id.

The Court finds that Northern has met the two-prong test articulated by the Supreme Court in *Lexmark*.  Northern has alleged an injury to its commercial interest in reputation or sales, stating in its complaint: "Henry's actions have directly caused damage and injury to Northern's business through lost sales and lost goodwill and enterprise value."  See Doc. No. 1, ¶ 132.  Northern also alleges "Henry's' misrepresentations were material and influenced various gas station and convenience stores' purchasing decisions (i.e., to purchase from Henry's instead of Northern)," see Doc. No. 1,  ¶ 128, satisfying the proximate-cause prong.  Thus, Northern alleges "the classic Lanham Act false-advertising claim in which one competito[r] directly injur[es] another by making false statements about his own goods [or the competitor's goods] and thus inducing customers to switch."  Lexmark, 572 U.S. at 137 (internal quotations omitted) (alterations in original). Accordingly, Northern has standing to sue under the Lanham Act.

Henry's cites *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704 (11th Cir. 2019) for the proposition that the plaintiff must have the right to enforce the trademark, as provided by the trademark holder, in order to sue under the Lanham Act.  *Kroma*, however, was a trademark infringement case, implicating Section 1125(a)(1)(A), which is a claim of false association with another's protectable mark.  Kroma, 920 F.3d at 706, 708; see also Parks LLC v. Tyson Foods, Inc, 863 F.3d 220, 226 (3d Cir. 2017) (stating that Section 1125(a)(1)(A) is  "the foremost federal vehicle for the assertion of . . . infringement of . . . unregistered marks, names and trade dress"); 87 C.J.S. Trademarks, Trade Names, and Unfair Competition § 158 (2020) (stating that "possession or use of a trademark is not an element of a false advertising claim of unfair competition, unlike a false association claim.").  Further, *Kroma* is not controlling precedence on this Court.  The controlling case law for false advertising under the Lanham Act (Section 1125(a)(1)(B)) is *Lexmark*.  Thus, the Court is bound by the framework that the United States Supreme Court utilized in *Lexmark*.

### 2.  Failure to State a Claim

Unlike the alleged torts underlying the claim for unlawful interference with business, Henry's does not explicitly contend the particularity requirements of Rule 9(b) apply to Northern's Lanham Act claim.  Instead, Henry's argues that if the Court finds statutory standing, the claim should be dismissed for failure to satisfy Rule 8 of the Federal Rules of Civil Procedure (as opposed to Rule 9(b)).  The Court finds no reason as to why Rule 9 should apply to claims of deceit, false advertising and consumer fraud protection under state law, but not to a claim of false advertising under the Lanham Act.

To establish a false advertising claim under the Lanham Act, a plaintiff must prove "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." Buetow v. A.L.S. Enterprises, Inc., 650 F.3d 1178, 1182 (8th Cir. 2011).  The Court finds the elements of false advertising under the Lanham Act substantially similar to false advertising under N.D. Cent. Code § 51-12-01.  The claim of false advertising under the Lanham Act is also similar to North Dakota's deceit (N.D. Cent. Code §§ 9-10-02 and 9-10-03) and consumer sales fraud prevention statutes (N.D. Cent. Code § 51-15-02) in that they all generally require some sort of misrepresentation.  Moreover, Northern's allegations of Henry's' misrepresentations are the same allegations lodged under the claim for unlawful interference with business.  These allegations sounded in fraud under that claim; likewise, they sound in fraud under the Lanham Act claim.  The nature of the allegations have not changed simply because the statute they are being analyzed under has changed.

Courts are divided on the issue of whether Rule 9(b) applies to Lanham Act claims that are grounded in fraud.  See Nestle Purina PetCare Co. v. Blue Buffalo Co., No. 4:14 CV 859 RWS, 2015 WL 1782661, at *8 (E.D. Mo. Apr. 20, 2015) (noting that "there is a split in authority over whether 9(b) applies to Lanham Act claims that are grounded in fraud"); compare Conditioned Ocular Enhancement, Inc. v. Bonaventura, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006) ("Claims that allege … false advertising under the Lanham Act are subject to the heightened pleading requirements of

Fed. R. Civ. P. 9(b)."), <u>with</u> <u>John P. Villano Inc. v. CBS, Inc.</u>, 176 F.R.D. 130, 131 (S.D. N.Y. 1997) ("[A] claim of false advertising under [the Lanham Act] falls outside the ambit of Rule 9(b) and may not be subject of any heightened pleading requirement").

In *Nestle Purina PetCare*, the Eastern District of Missouri applied Rule 8(a), as opposed to Rule 9(b), concluding that it "is undisputed that Rule 9(b) does not necessarily apply to Lanham Act claims for false advertising because the elements of a false advertising claim under the Act do not require proof of fraud or mistake." <u>Nestle Purina PetCare Co.</u>, No. 4:14 CV 859 RWS, 2015 WL 1782661, at *7. In reaching that conclusion, the Eastern District of Missouri relied upon *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309 (8th Cir. 1997). In *NationsMart*, the Eighth Circuit held that Rule 9(b) did not apply to Section 11 Securities Act claims for false statements and misrepresentations because "proof of fraud or mistake is not a prerequisite to establishing liability," and the plaintiffs alleged more than was necessary to recover under the Securities Act. <u>NationsMart</u>, 130 F.3d at 314-15.

In 2018, the Eighth Circuit concluded in *Olin* that Rule 9(b) applies to North Dakota's consumer sales fraud prevention statute, deceit statute, and N.D. Cent. Code § 49-22-16.1, which "penalizes obtaining easements through 'harassment,' 'threat,' 'intimidation,' and other 'unfair tactics,' as well as through 'misrepresentation,' 'deception,' and 'fraud.'" <u>Olin</u>, 910 F.3d 1072, 1075 (8th Cir. 2018). On application of Rule 9(b) to a claim under Section 49-22-16.1, the Eighth Circuit noted, "A claim may sound in fraud even though it is brought under a statute that also prohibits non-fraudulent conduct." <u>Id.</u>

Based on recent Eighth Circuit case law, the particular statute at issue (15 U.S.C. § 1125(a)(1)(B)), and the allegations set forth in the complaint, the Court finds Rule 9(b)'s heightened

19

pleading standards apply.  See also Conditioned Ocular Enhancement, 458 F. Supp. 2d at 709

(raising the application of Rule 9(b) *sua sponte*).  For the same reasons articulated above, Northern

has failed to adequately plead a violation of the false advertising provision of the Lanham Act under

Rule 9(b).  The claim is dismissed.


### C.   Declaratory and Punitive Relief

Northern seeks a declaratory judgment and punitive damages.  Because Northern has not

adequately alleged an underlying claim, these claims must fail.  See Schilling v. Rogers, 363 U.S.

666, 677 (1960) (noting the Declaratory Judgment Act "is not an independent source of federal

jurisdiction . . . the availability of such relief presupposes the existence of a judicially remediable

right."); Western Cas. & Sur. Co. v. Herman, 405 F.2d 121, 124 (8th Cir. 1968) (stating that the

Declaratory Judgment Act "does not create any new substantive right but rather creates a procedure

for adjudicating existing rights."); Pickrell v. Sorin Grp. USA, Inc., 293 F. Supp. 3d 865, 869 (S.D.

Iowa 2018) ("The Declaratory Judgment Act does not create a cause of action without an underlying

claim."); N.D. Cent. Code § 32-03.2-11(1) (providing that "when the defendant has been guilty by

clear and convincing evidence of oppression, fraud, or actual malice, the court or jury, in addition

to the actual damages, may give damages for the sake of example and by way of punishing the

defendant"); N.D. Cent. Code § 32-03.2-11(4) (providing that "no award of exemplary damages may

be made if the claimant is not entitled to compensatory damages").


## IV.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and the relevant law.

For the reasons set forth above, the Defendant's motion to dismiss (Doc. No. 4) is **GRANTED**.  The

Plaintiff's complaint is dismissed.  Let judgment be entered accordingly.

**IT IS SO ORDERED**.

Dated this 22nd day of July, 2020.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court